No. 47,181

STATE OF KANSAS, *Appellee*, v. VELTON BELOTE, *Appellant*.

(516 P. 2d 159)

Opinion filed November 3, 1973.

*Robert M. Brown*, of Topeka, argued the cause and was on the brief for the appellant.

*John H. Taylor*, county attorney, argued the cause, and *Vern Miller*, attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: Velton Belote was convicted by a jury of three counts of selling heroin in violation of K. S. A. 1971 Supp. 65-2502 (since superseded and repealed). New trial was denied, sentence was imposed and Belote now appeals.

The sales allegedly were made by appellant to an undercover agent at different locations in Junction City on May 23, May 25, and June 7, 1972 (two separate sales on May 25th were consolidated into one count). The agent was one employed by the attorney general. She testified as to each of her purchases from appellant of tinfoil packages (from one to four on each occasion) purportedly containing heroin. After each purchase the agent placed the packages in a brown envelope, made identifying marks on each envelope and personally placed each envelope in the evidence locker at the laboratory of the Kansas Bureau of Investigation. At appellant's preliminary hearing and later at trial in district court the agent identified four exhibits as the particular envelopes thus handled by her. Also at preliminary examination and at trial a forensic chemist employed by the K. B. I. identified the same exhibits as items he had personally removed from the K. B. I. evidence locker. He further testified he had analyzed a white powder contained in each of the tinfoil packages and that such analysis revealed the powder to be heroin. The exhibits were received in evidence over appellant's objection. Complaint is renewed on appeal.

The bases of appellant's objection is that no proper foundation was laid for receiving the exhibits into evidence in that there was no showing these were the same exhibits which had been introduced in evidence at appellant's preliminary examination and no showing was made as to their custody and control since the time of that event. The objection misconceives the character of the exhibits and the facts sought to be developed thereby. Of and in themselves the exhibits had little or no testimonial value other than to demonstrate generally the nature of the packages allegedly purchased from appellant by the undercover agent, the contents of which were later subjected to chemical analysis, and the method used to preserve

their identity. It was not incumbent upon the prosecution to make the showing urged by appellant or even to show that the contents of the packages were in the same condition at the time of trial in district court as when sold by appellant to the agent. There is no indication of tampering with the exhibits and it must be recognized that many substances may be either wholly or partially consumed or changed in appearance by reason of chemical analysis. Beyond this, the critical fact to be proven in connection with these exhibits was that the contents of the packages sold by appellant consisted of heroin. In such a situation the indentity to be proved is that of the material sold with the material analyzed. Here the prosecution clearly established the essential links in the chain of evidence to show that the powder analyzed was that sold by appellant to the agent. No error derived from admission of the exhibits.

Appellant asserts the trial court improperly restricted his cross-examination of the undercover agent as to her prior experience with drugs. The complaint arises from the following, which occurred after she testified she had started to work for the attorney general "mainly because of what she had seen drugs doing to her friends":

"Cross Examination by Mr. Brown:

"Q. Had you yourself had some experience with drugs?

"A. Yes, sir.

"Mr. Taylor: Objection, your Honor.

"Mr. Brown: I think it goes to credibility.

"The Court: She's answered it. Go ahead.

"Q. You had had experience with drugs?

"The Court: No, she answered. I'll sustain the objection.

"Mr. Brown: You're sustaining the objection?

"The Court: Well, she answered that question; now you're repeating the question.

"Mr. Brown: Excuse me.

"The Court: So I would sustain the objection to the additional.

"By Mr. Brown:

"Q. Tell us then what experience you had with drugs.

"Mr. Taylor: Now, I object to that.

"Mr. Brown: It goes to her credibility.

"The Court: No, sustained, as to the form, the way the question was asked.

"Q. Had you been addicted to drugs?

"Mr. Taylor: Objection to that, your Honor.

"The Court: Overruled.

"Q. Had you?

"A. Well, I don't know if I was ever really addicted or not.

"Q. Well, had you been in the hospital for treatment?

"A. No.

"Q. Do you feel that you have ever had the drug habit?

"MR. TAYLOR: Objection, your Honor.

"THE COURT: That calls for a conclusion. Yes, sustained.

"Q. Did you take heroin yourself?

"THE COURT: I'm sorry, I didn't hear you, Mr. Brown.

"Q. (Repeated) Did you take heroin yourself?

"MR. TAYLOR: Objection to its relevance to the case.

"MR. BROWN: It's got a pertinent bearing to this case, your Honor.

"MR. TAYLOR: Well, we don't have any prior time at all.

"THE COURT: That's the problem that I'm running into.

"Q. Prior to the time that you say you made these buys from the defendant here, had you taken heroin?

"MR. TAYLOR: Objection to that as being irrelevant; prior to the time it would have no relevance to this particular time in question.

"MR. BROWN: Well, it's got a bearing, Judge, on credibility.

"THE COURT: No, sustained.

"MR. BROWN: You're not going to permit her to answer that question, your Honor?

"THE COURT: That's right.

"Q. Had you been convicted of any offense related to drugs?

"MR. TAYLOR: Objection to that.

"THE COURT: Sustained."

The assertion of error based upon the exclusion of testimony as to whether the witness had ever been convicted of any offense related to drugs may be quickly determined. K. S. A. 60-421 provides:

"*Limitations on evidence of conviction of crime as affecting credibility.* Evidence of the conviction of a witness for a crime not involving dishonesty or false statement shall be inadmissible for the purpose of impairing his credibility. . . ."

Drug offenses *per se* do not involve dishonesty or false statement in their commission; hence 60-421 renders convictions for such offenses inadmissible for the purposes of impairing the credibility of a witness.

A more serious question arises in the adverse rulings made on the three remaining questions. The witness did testify she had had some experience with drugs; that she did not know whether she was ever really addicted or not and she had not been hospitalized for treatment. Objections were sustained to questions as to her experience with drugs, whether she felt she had ever had the drug habit and whether she had taken heroin prior to her purchases from appellant.

Appellant argues the questions all bore on the credibility of the witness. Our law respecting credibility of witnesses is now largely codified. The starting point is K. S. A. 60-420 which provides:

"*Evidence generally affecting credibility.* Subject to sections 60-421 and 60-422, for the purpose of impairing or supporting the credibility of a witness, any party including the party calling him may examine him and introduce extrinsic evidence concerning any conduct by him and any other matter relevant upon the issues of credibility."

Mention has already been made of 60-421 dealing with convictions.

K. S. A. 60-422 provides in part:

"*Further limitations on admissibility of evidence affecting credibility.* As affecting the credibility of a witness . . . (*c*) evidence of traits of his character other than honesty or veracity or their opposites, shall be inadmissible; (*d*) evidence of specific instances of his conduct relevant only as tending to prove a trait of his character, shall be inadmissible."

The latter statute makes distinction between traits of character and specific instances of conduct, a distinction not always easy to apply with respect to the use of drugs. Nonetheless the import is clear—evidence of traits of a witness' character other than honesty or veracity or their opposites, as well as evidence of specific instances of the witness' conduct relevant only to prove such traits of character, are inadmissible as affecting credibility.

The questions put to the witness here to which objections were sustained clearly were probing either for testimony that she was an addict (which she denied in an answer elicited over the state's objection) or that she had taken drugs. Treating drug addiction as a trait of character as we think it must be, it is not one either of honesty or veracity or their opposites and hence evidence of the same is inadmissible. Likewise, evidence of specific instances of improper drug use relevant only to prove such trait is also inadmissible. A majority of the courts in other jurisdictions which have wrestled with the same problem have, in the absence of statute, come to the same conclusion. In an annotation on the use of drugs as affecting credibility of a witness (52 ALR 2d 848), this statement appears:

". . . [T]he rule supported by the majority of the cases seems to be that for the purpose of discrediting a witness, evidence is not admissible to show that he is a user of opium, morphine, or similar drugs, or to show the effect of the use of such drugs, unless it is proven that the witness was under their influence at the time of the occurrences as to which he testifies, or at the time of the trial,

or that his mind or memory or powers of observation were affected by the habit." (p. 849.)

Here the questions to which objections were sustained were broad in nature and there was no indication of any attempt to show that the witness was under the influence of drugs when the alleged purchases occurred or while she was testifying, or that her mental faculties were impaired as a result of drug use. Under these circumstances, and in view of the familiar rule that the scope and extent of cross-examination of a witness on collateral matters for the purpose of impeachment rests largely in the trial court's discretion, we find no error in the rulings of which complaint is made.

Appellant also asserts the trial court unduly restricted the redirect examination of his brother, who testified as a defense witness. The question to which objection was sustained dealt with whether or not the witness had seen appellant at a particular time and place. This same question in another form had already been asked and answered by the witness and the trial court did not err in excluding the repetition.

Appellant urges error in the denial of his motion to discharge made at the conclusion of the state's evidence, premised solely on the alleged inadmissibility of the four state exhibits. We have determined that contention adversely to appellant. The state's evidence was amply sufficient to support appellant's conviction and the trial court ruled correctly on the motion to discharge.

Appellant specifies error in several respects concerning the court's instructions. He complains the court did not instruct on the rule of reasonable doubt. This assertion is factually incorrect. The subject was adequately covered in instruction No. 4 given to the jury, which instruction was identical to that found in PIK Criminal 52.02. Appellant's further complaint that this instruction directed the jury to *assume* that the defendant was innocent, etc., instead of *presume* was answered adversely to his position in *State v. Taylor,* 212 Kan. 780, 512 P. 2d 449.

Finally, appellant contends the court erred in failing to instruct the jury as to how it should consider expert testimony. The court did give guidelines for determining the credibility of witnesses generally, as set forth in PIK Criminal 52.09. In *In re Estate of Roberts,* 192 Kan. 91, 386 P. 2d 301, this court held:

"The testimony of experts is to be considered by the same rules and tried by the same tests as any other testimony adduced in a case, and is entitled to such

weight and credit as the trier of the facts believes it possesses, when viewed in connection with all the circumstances and other testimony adduced in the case." (p. 98.)

The trial court did not err in failing to give a separate instruction on the credibility of an expert witness.

The judgment is affirmed.

APPROVED BY THE COURT.